Michael RODRIGUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–84–0346–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 7, 1985.

Stephen A. Doggett, Richmond, for appellant.

William A. Meitzen, Fort Bend Dist. Atty., Bryan K. Best, Fort Bend Asst. Dist. Atty., Richmond, for appellee.

Before WARREN, DUGGAN and HOYT, JJ.

## OPINION

DUGGAN, Justice.

A jury convicted appellant of burglary of a habitation with intent to commit sexual assault and assessed his punishment at seven years confinement. Appellant urges four grounds of error on appeal. We affirm.

The complainant, Gracie Gutierrez, testified that she was awakened at about 2:40 a.m. by someone leaning over her bed. She immediately recognized this person as the appellant, Michael Rodriguez, whom she had known for four years. She told him to leave or she would scream for her father. The appellant, muttering that he "wanted her", got into the bed on top of her and told her not to scream because he did not have any clothes on. He then tried to kiss her, to touch her in the vaginal area, and to remove her shorts. When she began screaming and pulling his hair, he got up, grabbed his pants and shirt, removed the pliers he had inserted in the door latch to prevent it from being opened, and ran out the bedroom door.

Guadelupe Gutierrez, the complainant's mother, testified that when she heard Gra-cie screaming, she ran into the hallway. There, she recognized the appellant as he ran past her, wearing only a shirt and carrying his pants in his hand.

Arnoldo Gutierrez, the complainant's father, testified that he heard Gracie scream, ran out into the hallway, grabbed the fleeing intruder, and began struggling with him. During the struggle, Mr. Gutierrez recognized the intruder as the appellant.

All three of these witnesses testified that as appellant fled, he dropped three items in the hallway: a pair of boots, a belt with the initials "M.R." on the buckle, and a pair of handcuffs.

Appellant's first ground of error contends that the trial court erred in refusing to admit evidence of his prior consistent statements supporting his defense of alibi.

Appellant testified that on the night in question, he picked up the complainant's brother, Ramon Gutierrez, who went with him to a dance at the Torez Ball Room, where appellant met Blasa Regino. Ms. Regino testified, in support of appellant's alibi, that she was engaging in sexual intercourse with appellant in an automobile elsewhere at the time he was alleged to have been in the complainant's bedroom. Appellant testified that he and Ramon left the dance during the evening in the complainant's car, so that he, the appellant, could change his clothes. The two men used the complainant's car, he said, because appellant's own car was blocked in at the ballroom's parking lot. They drove to appellant's grandmother's house, where he went inside and got a pair of jeans, a T-shirt, and a gun, since he anticipated trouble with other persons back at the ballroom. Ramon drove back to the ballroom while appellant changed clothes in the car, placing the clothes he took off into a brown paper sack which he left in the complainant's car. He testified that he also put into the sack the boots, the belt, and the handcuffs introduced as State's Exhibits 1, 2, and 3.

Appellant further testified that after he returned to the dance, he felt out of place wearing a T-shirt and jeans, and again

went outside to the complainant's car and changed clothes once more. He put on his "casual jeans" and a beige button-front shirt, leaving the old jeans and the T-shirt in the complainant's car.

Appellant testified further that when the dance was over at about 2:00 a.m., he left in his car with Blasa Regino and Ramon, dropped Ramon off, and then drove with Ms. Regino to another friend's house. This friend was not at home, but appellant and Ms. Regino stayed at this location in his car for about one hour. Appellant then took Ms. Regino back to the Torez Ball Room, dropped her off, and picked up Robert Flores. Appellant testified that he drove to Houston with Flores, and that the two men returned to Richmond before noon. Flores testified as an alibi witness concerning the trip to Houston.

On cross-examination, the prosecutor undertook to impeach appellant's explanation as to why his boots, belt, and handcuffs were found at the complainant's home. The State concedes that the prosecutor's cross-examination of appellant amounted to an accusation that appellant fabricated his testimony after listening to other witnesses during trial. In an attempt to rebut the prosecutor's claim of recent fabrication, appellant called his father to the stand to testify to what Michael had told him "a couple of days after the incident" about leaving his clothes in the complainant's car. The state's objection to this testimony as hearsay and self-serving was sustained, and appellant's father was not allowed to testify before the jury. His excluded testimony was preserved by a bill of exceptions.

■ When a testifying defendant has been impeached or sought to be impeached by proof of contradictory statements, it is error to refuse to permit him to sustain his own testimony by proof of statements similar to those testified to at trial, and which were made shortly after the transaction and before any motive or inducement existed to fabricate. *Rains v. State*, 146 S.W.2d 176, 179 (Tex.Crim.App.1941). This rule is equally applicable to the impeachment of testimony by a charge of recent fabrica-

tion. However, it is equally well-settled that proof of statements in harmony with a defendant's testimony made after a motive existed which would likely prompt him to testify falsely, cannot be introduced to support his testimony. *Id.*

■ The statements in question were made to appellant's father "a couple of days after the incident." While appellant had not been arrested or charged for the alleged offense when he made the statements, the record shows that he knew within hours of the incident that he was being accused of assaulting the complainant.

The assault was alleged to have occurred at about 2:40 a.m. Appellant testified that when he telephoned Manuel Ibarra from Houston that morning before dawn, Ibarra told him that Ramon Gutierrez was looking for him and had accused him of assaulting Ramon's sister. Appellant also testified that he called Ramon when he returned to Richmond from Houston and denied assaulting the complainant. Ramon testified that he had told Steve Ibarra, Manuel's brother, at about 3:30 a.m. that he was looking for appellant because the latter had assaulted his sister. Ramon Gutierrez testified that appellant called and told him that "he didn't do it," and that he wanted his boots back.

Even if appellant had made the statement at issue to his father before he knew of the accusation against him and thereby had a motive to fabricate, the error in excluding the supporting testimony was harmless in light of the overwhelming direct evidence of appellant's guilt. *Lewis v. State*, 504 S.W.2d 900, 902 (Tex.Crim.App. 1974). Further, appellant's father's testimony before the jury would have been cumulative of the testimony of (1) Blasa Regino, who testified that appellant left the dance to change his clothes, and that she was with him in his car at the time of the alleged assault, and (2) Ramon Gutierrez, who testified that he was with appellant when the latter changed clothes in the complainant's car. The excluded testimony was not of such moment as to materially change the state of the case favorably to

the accused; accordingly, there is no ground for reversal. *Ewalt v. State*, 363 S.W.2d 279, 283–84 (Tex.Crim.App.1963). Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in failing to submit his requested instruction limiting the jury's consideration of extraneous offenses.

The "extraneous offenses" complained of by appellant were introduced into evidence by his own testimony, not through any direct questioning by the prosecutor as to any offense. Appellant testified on direct examination that when he went to get a change of clothes, he also picked up a gun in anticipation of trouble back at the dance. On cross-examination, the appellant volunteered that he went to Houston with Robert Flores on the night in question to buy drugs.

An accused is entitled to be tried on the accusation made in the state's pleading, and not for some collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim. App.1983). When evidence of an extraneous offense is introduced under a recognized exception to the rule, it is incumbent upon the trial court to instruct the jury that they cannot consider the extraneous offense except for the specific purpose for which it was admitted and unless they find beyond a reasonable doubt that the defendant committed such offense. *Nicholas v. State*, 136 S.W.2d 221, 221–22 (Tex.Crim. App.1940).

However, when a defendant initially introduces and testifies to the details of an extraneous offense, as appellant did here, he is not entitled to an instruction limiting the jury's consideration of the evidence. *Kirkpatrick v. State*, 515 S.W.2d 289, 292 (Tex.Crim.App.1974); *Moss v. State*, 364 S.W.2d 389, 391 (Tex.Crim.App.1963).

Appellant concedes that it is not a criminal offense to try to buy drugs, as he testified he went to Houston to do. However, he urges that he was harmed by the court's refusal to give a limiting instruction about extraneous offenses because of his own testimony of his possession of the pistol in connection with his alibi. He asserts that the refusal penalized him for telling the whole truth. Had he omitted to tell of the weapon, and had the complainant's brother, Ramon, testified about it, he argues that his selective omission would have been held up to the jury to further challenge his credibility. The situation appellant argues is speculative and hypothetical since Ramon did not testify, either on direct or cross-examination, that appellant carried the pistol.

We are aware of no exception entitling a defendant to a charge on extraneous offenses when he initially injects evidence of such offenses into the record because of an expectation that another witness may do so. Appellant's second ground of error is overruled.

In his third ground of error, appellant contends that the trial court erred in failing to define in its charge the term "consent" as it relates to sexual assault.

The charge to the jury included the following definitions:

Our law provides that a person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation to commit theft or any felony.

. . . .

Sexual assault is a felony offense wherein a person has sexual intercourse with a female not his wife without the female's consent.

. . . .

'Effective consent' means assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by force, threats, or fraud.

Sec. 30.02 of the Penal Code, which sets out the elements of the offense of burglary, does not define the term "effective consent;" thus, a trial court must look to the general definitions section of the Code, sec-

tion 1.07, for the definitions of "consent" and "effective consent." The definition of "consent" given in the charge is that found in sections 1.07(9) and 1.07(12)(A).

However, Section 22.011 of the Penal Code, which sets out the elements of sexual assault, also defines the term "consent" or "without the consent of the other person," as used therein:

(a) A person commits an offense if the person:

(1) intentionally or knowingly:

(A) causes the penetration of the anus or vagina of another person who is not the spouse of the actor by any means, *without that person's consent;* ....

(b) A sexual assault ... is without the consent of the other person if:

(1) the actor compels the other person to submit or participate by the use of physical force or violence; [or]

(2) the actor compels the other person to submit or participate by threatening to use force or violence against the other person, and the other person believes that the actor has the present ability to execute the threat;....

(Emphasis added).

Appellant objected to the charge's failure to define "consent" as it relates to sexual assault, as set out in sec. 22.011(b)(1) and (b)(2). He now argues that the failure to do so allowed the jury to determine his guilt or innocence without an instruction as to the degree of force necessary to constitute a sexual assault, and without a finding that appellant intended to use such force.

■ The complaint is without merit. Since appellant was indicted for burglary of a habitation with the intent to commit sexual assault, and not for the offense of sexual assault, it was unnecessary to set out the constituent elements of sexual assault as long as that offense was defined in the abstract portion of the charge, as it was here. *See Young v. State,* 573 S.W.2d 817 (Tex.Crim.App.1978); *Taylor v. State,* 630 S.W.2d 469 (Tex.App.—San Antonio 1982).

■ Even if the omission to define "consent" in the terms of sections 22.011(b)(1) and (b)(2) had been error, it would have been harmless since there was no contested issue of consent.

The appellant's defensive theory was that of alibi, and not that the complainant consented to the sexual encounter. The complainant testified: (1) that she gave no one permission to enter her bedroom; (2) that she told appellant to get out of her room or she would scream for her father; and (3) that when the appellant got on top of her, touched her in the vaginal area, and tried forcibly to remove her shorts, she started screaming and pulling his hair. Since the facts present no contested issue of consent, the jury could not have been misled by the definition of consent given. Neither could the jury have found appellant guilty in a way not made penal by the statute. The error, if any, was not calculated to injure the appellant's rights or deprive him of a fair and impartial trial. *Naim v. State,* 644 S.W.2d 746, 748 (Tex. Crim.App.1983). Appellant's third ground of error is overruled.

In his fourth and final ground of error, appellant contends there was insufficient evidence to support a verdict of guilty of the offense of burglary of a habitation.

Appellant's argument focuses on the insufficiency of the evidence to support a finding of guilt on the underlying felony of sexual assault. However, the indictment alleges burglary of a habitation with the *intent* to commit sexual assault, not the commission or attempted commission of sexual assault. *Ford v. State,* 632 S.W.2d 151, 153 (Tex.Crim.App.1982).

In reviewing the sufficiency of the evidence to sustain a criminal conviction, the appellate court must look at all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983).

The intent with which a person unlawfully enters a habitation is a fact question for the jury to be drawn from the surrounding circumstances. *Stearn v. State*, 571 S.W.2d 177 (Tex.Crim.App.1978). The evidence shows that the complainant was awakened by appellant leaning over her bed. She recognized him and asked him what he was doing there, to which he replied, "Be quiet and don't say nothing." She told him to leave or she would scream for her father. The appellant told her not to scream because he did not have any clothes on. The appellant then got into the bed on top of the complainant, told her he wanted her, started kissing her, tried to touch her vaginal area, and forcibly tried to remove her shorts. The evidence is sufficient for the jury to have found beyond a reasonable doubt that appellant entered the complainant's home with the intent to commit sexual assault. Appellant's fourth ground of error is overruled.

The judgment is affirmed.