

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JORGE CORTEZ, | § | No. 08-18-00156-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 243rd District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20170D05240) |
| | § | |

## **O P I N I O N**

A jury convicted Cortez, Appellant, of aggravated assault with a deadly weapon. *See* TEX.PENAL CODE ANN. § 22.02(a)(2), (b)(providing for a second-degree-felony offense of aggravated assault with a deadly weapon). Cortez elected for the trial court to assess punishment, and after he pleaded true to several enhancement paragraphs alleged by the State that increased his punishment range to a term not less than 25 years or more than 99 years, the trial court sentenced him to forty-three-years' confinement. *See* TEX.PENAL CODE ANN. § 12.42(d)(providing for an enhanced penalty range where it is shown on the trial of a felony offense that the defendant has previously been convicted of two separate felony offenses).

In two issues on appeal, Cortez argues that his trial counsel rendered ineffective assistance

through the following acts of both commission and omission relating to the introduction of his ten prior convictions in the guilt-phase of trial: (1) eliciting testimony from Cortez on direct-examination about his prior convictions – and, allegedly, failing to subsequently object to further testimony the State elicited from him on cross-examination – where the age and characteristics of those convictions made them inadmissible under Texas Rule of Evidence 609(b); and (2) failing to request a limiting instruction in the jury charge for those convictions under Texas Rule of Evidence 105. Finding that Cortez has not proven the deficient-performance prong for either of his complaints, we hold that trial counsel was not ineffective, and we affirm the trial court's judgment.

## I. BACKGROUND

### A. The State's Case

Shortly after midnight on September 6, 2017, the complainant, Alan, was alone at his home when he went to sleep. Alan lived with his mother, Dora, and his brother. However, on this night, Dora was working, and Alan's brother not at home. Dora had been dating Cortez shortly before the offense, but the two were no longer in a relationship. Once the relationship ended, Dora was forced to change the locks on her home because Cortez would not return his key to her home.

In the middle of the night, Alan woke from his sleep to find Cortez standing at his feet. Cortez held a knife in each hand, told Alan not to yell or he would kill him, and ordered Alan to call Dora. Alan called his mother and handed his cell phone to Cortez. When Dora saw her son's number on the caller ID, she answered the phone because she believed her son was calling, and by that time, she had blocked Cortez's number. When she answered, Cortez told her that he would kill Alan if she did not get home soon. Both Alan and Dora took Cortez's threat seriously, and

both were terrified.

After the call, Cortez did not allow Alan to go anywhere in the home by himself. Cortez kept Alan within arm's reach and, at times, held onto Alan's shoulder. Throughout this time, Cortez appeared to be drunk, and ranted in an aggressive, amped-up manner about his past relationship with Dora. At one point, Cortez told Alan that his mother thought she was so smart for changing the locks but that he had entered the home through a kitchen window.

Eventually, Alan feigned a reason to get away from Cortez by claiming he needed to go outside to feed his dogs. As Alan went to the backyard patio to set out the dog bowls, Cortez stood just inside the sliding door that faced the patio. Seeing his chance to escape, Alan slammed the sliding door shut, and wearing only his boxer shorts and no shoes, he jumped over the backyard rock wall to a neighbor's house. As Alan leapt over the wall, Cortez tried to grab him and yelled for him to come back.

After escaping from Cortez, Alan pounded on the neighbor's door, yelling for help, even though he had never met his neighbors before. His neighbor, Charlie, was making breakfast when he heard loud banging and someone screaming for help. Charlie opened the door, and Alan told Charlie that someone was trying to kill him. Charlie saw that Alan was dressed solely in underwear and appeared scared and frantic. Charlie quickly let Alan inside, locked the door, and told others in the house to get a shotgun. Alan then called his mother to let her know he had escaped and to prevent her from going home. Alan also sent a text message to his brother informing him that Cortez had entered the home through a window, threatened him, and had two knives. Although both Alan and Dora eventually called police, Cortez was not arrested until a later date.

The State's notice of enhancement alleged Cortez had been convicted in November 2002

3

for a burglary of habitation in two separate cases; and January 2003 for one burglary of a habitation. The State's notice of habitualization alleged Cortez had been convicted in December 1993 for burglary of a habitation in six separate cases.

The State's notice of extraneous included one additional conviction for burglary of habitation in November 2002. The Notice also alleged arrests for a Federal Charge of Illegal Reentry in May 2002 and a Federal Charge of Previously Ordered Removed and Entered or Attempted to Enter Without Being Admitted in April 2009.

**B. The Defense's Case**

At trial, Cortez was the only defense witness. Before he testified, the trial judge asked defense counsel to address with Cortez the ramifications of him testifying in light of his criminal history. In a brief discussion with defense counsel, Cortez acknowledged on the record his counsel had explained his right to remain silent, not testify and "all the implications legally and the impact that it would have on your credibility with the [criminal] history [.]" However, Cortez chose to testify regardless.

On direct-examination, Cortez admitted that he had been previously convicted of the following offenses: (1) four counts of burglary of a habitation in 1993; (2) the federal offense of illegal re-entry in 2002; (3) two counts of burglary of a habitation and one count of burglary of a building in 2002; and (4) one count of burglary of a habitation in 2003.

Cortez then testified to a contravening narrative of his relationship with Dora in which she tried to prevent him from leaving her at the time the two ended their relationship. In this narrative, Dora also threatened to call the police on him and request a protective order. Regarding the date of the offense, Cortez testified that he had gone to Dora's home only to tell her not to call the

police because he was in the county illegally. Cortez explained that he was able to enter the home because his key still worked. Once inside the home, he woke Alan and asked him to call Dora. However, Cortez was adamant in his testimony that he never threatened anyone, never had any knives, and never tried to stop Alan from leaping over the rock wall.

On cross-examination, the State asked Cortez about his prior convictions. When the State initially began to ask Cortez about those convictions, Cortez's trial counsel objected on the basis that the subject-matter has been "[a]sked and answered." However, the trial court overruled the objection. For his first two burglary-of-a-habitation charges, Cortez acknowledged that he was placed on probation in July 1993 but was then revoked when he pleaded guilty to three more burglary-of-a-habitation charges and was sentenced to thirteen-years' confinement on all of those charges. Cortez further acknowledged he was convicted in federal court for illegal re-entry in October 2002 and was sentenced to seventy-one-months' confinement for it. His confinement for illegal re-entry ran concurrent with a two-year sentence for his burglary-of-a-building charge and a fifteen-year sentence for his remaining three burglary-of-a-habitation charges. Overall, the State elicited testimony from Cortez about the same illegal-re-entry, burglary-of-a-building, and seven burglary-of-a-habitation convictions that Cortez admitted on direct-examination, but the State also elicited testimony about a single additional burglary-of-a-habitation conviction that had not been previously discussed.

At the conclusion of the State's cross-examination, the State asked, "So basically what this boils down to here is the jury either believes Alan or they believe the ten-time-convicted felon. Right?" Cortez replied, "Yes, sir."

## II. ISSUES ON APPEAL

5

In two issues, Cortez argues that trial counsel rendered ineffective assistance for two reasons both relating to the admission of his ten prior convictions. In his first issue, he argues that trial counsel was ineffective for eliciting testimony from Cortez about those prior convictions during Cortez's direct-examination – and for allegedly failing to object to further testimony the State elicited from him on cross-examination – as those convictions were inadmissible under Texas Rule of Evidence 609. In his second issue, Cortez argues that trial counsel was ineffective for failing to request a limiting instruction in the jury charge for those convictions under Texas Rule of Evidence 105.

In a single reply, the State argues that Cortez has shown neither deficient performance nor prejudice to establish that either complained-of instance amounted to ineffective assistance. As for Cortez's first issue, the State contends that no deficient performance exists because Cortez's convictions were admissible under Rule 609 and, thus, trial counsel could not have been deficient for failing to object to admissible evidence. As for Cortez's second issue, the State contends that Cortez failed to prove deficient performance because it may have been trial strategy to refrain from requesting a limiting instruction where: (1) an instruction was not warranted for extraneous-offense evidence admitted on direct-examination; and (2) counsel may have wanted to avoid further highlighting Cortez's convictions to the jury. And as for the prejudice prong on both issues, the State contends that Cortez failed to prove any possible prejudice where ample evidence supported the jury's verdict and where both parties argued in closing that Cortez's prior convictions should be used to assess his credibility.

## III. DISCUSSION

### A. Standard of Review for a Claim of Ineffective Assistance of Counsel

6

To prevail on an ineffective-assistance-of-counsel claim, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The burden of proof is on a defendant to make both showings. *Weaver v. Massachusetts*, 137 S.Ct. 1899, 1910 (2017). A defendant's failure to make either of the required showings defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003).

The record must be sufficiently developed to overcome the strong presumption of reasonable assistance. *See id*. at 110-11. As recognized by the United States Supreme Court, the lack of any explanation in the record on direct appeal for trial counsel's actions or inactions often precludes any valid consideration of whether counsel's performance was deficient:

> If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse . . . The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them.

*Massaro v. U.S.*, 538 U.S. 500, 505 (2003).

As a general rule, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance with which we afford counsel's actions or inactions in our review of an ineffective-assistance claim. *See Rylander*, 101 S.W.3d at 110-11. Thus, we will assume a strategic motive if any can be imagined, and as a corollary, we will find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex.Crim.App. 2005). Furthermore, we also note that trial counsel should ordinarily be given an opportunity to explain

7

their actions before being denounced as ineffective. *Rylander*, 101 S.W.3d at 111.

**B. Issue One: Whether Trial Counsel Committed Ineffective Assistance by Eliciting Testimony from Cortez about His Prior Convictions and by Failing to Object to Further Testimony the State Elicited from Cortez about those Convictions**

*1. Applicable Law*

Although Cortez's issues in this appeal are governed by the ineffective-assistance standard of review discussed above, the admission of evidence is normally governed under an abuse of discretion standard. *See Johnson v. State*, 490 S.W.3d 895, 908 (Tex.Crim.App. 2016). Under this standard, the trial court has "wide discretion" in ruling on the admissibility of a prior conviction, and we will reverse only when the decision is outside the zone of reasonable disagreement. *Theus v. State*, 845 S.W.2d 874, 881 (Tex.Crim.App. 1992).

Under Texas Rule of Evidence 609, evidence that a witness has been convicted of a crime is admissible to attack the witness's credibility if the crime was a felony or involved moral turpitude and the court determines that the probative value of evidence outweighs its prejudicial effect. TEX.R.EVID. 609(a). However, evidence of a conviction is not admissible under the rule if more than ten years has elapsed since the date of the conviction, or the release from confinement if later, unless the probative value substantially outweighs the prejudicial effect. TEX.R.EVID. 609(b). In short, the general rule is that if a conviction is under ten-years' old, the test for admission is whether the probative value outweighs the prejudicial effect, and if the conviction is over ten-years' old, the test is whether the probative value substantially outweighs the prejudicial effect. TEX R.EVID. 609(a), (b); *see also LaHood v. State*, 171 S.W.3d 613, 620 (Tex.App.—Houston [14th Dist.] 2005, pet. ref'd). The ten-year period is measured from the date of trial, rather than the date of the charged offense for which the defendant is on trial. *Ramirez v. State*, 873 S.W.2d

8

757, 762 (Tex.App.—El Paso 1994, pet. ref'd); *Armstrong v. State*, No. 14-18-00065-CR, 2019 WL 470373, at *3 n.2 (Tex.App.—Houston [14th Dist.] Feb. 7, 2019, pet. ref'd)(mem. op., not designated for publication).

In determining whether the probative value of evidence outweighs the prejudicial effect, courts look to the following factors proffered by the Court of Criminal Appeals: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus*, 845 S.W.2d at 880.

Eliciting testimony from the accused as to his own prior conviction can be a matter of sound trial strategy if the prior conviction is admissible. *Huerta v. State*, 359 S.W.3d 887, 891 (Tex.App.—Houston [14th Dist.] 2012, no pet.); *Martin v. State*, 265 S.W.3d 435, 443 (Tex.App.—Houston [1st Dist.] 2007, no pet.). It is common practice for defense attorneys to elicit such testimony because doing so removes the sting from an attack that would otherwise come from the State. *Huerta*, 359 S.W.3d at 891-92; *see also Stone v. State*, 17 S.W.3d 348, 349 (Tex.App.—Corpus Christi 2000, pet. ref'd). And of course, trial counsel cannot be held to have committed deficient performance where counsel did not object to admissible evidence. *See, e.g.*, *Ex parte Salcido*, No. 08-19-00178-CR, 2020 WL 1861967, at *7 (Tex.App.—El Paso Apr. 14, 2020, pet. ref'd)(not designated for publication); *Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970, at *7 (Tex.App.—El Paso Feb. 8, 2012, no pet.)(not designated for publication).

### 2. Application of the Five Theus Factors to this Case

#### i. Impeachment Value

Regarding the first *Theus* factor, the impeachment value of prior crimes involving deception or moral turpitude is greater than for crimes involving violence. *Theus*, 845 S.W.2d at 811. Burglary of a building and burglary of a habitation are crimes of deception. *See LaHood*, 171 S.W.3d at 621 (holding that burglary of a non-habitation is a crime of deception); *White v. State*, 21 S.W.3d 642, 647 (Tex.App.—Waco 2000, pet. ref'd)(holding that burglary of a habitation is a crime of deception).

Here, Cortez's prior convictions included one burglary of a building and eight burglaries of a habitation. All of these are crimes of deception. *See LaHood*, 171 S.W.3d at 621; *White*, 21 S.W.3d at 647. Thus, the impeachment value for these convictions is high. *See Theus*, 845 S.W.2d at 811. And regarding the single non-burglary conviction for illegal re-entry, Cortez does not discuss in his brief whether his conviction for illegal re-entry was a crime of deception or, for that matter, how it should be analyzed under the first *Theus* factor. Therefore, we will assume that it, too, is a crime of deception along with Cortez's burglary convictions. Even if it were not, this single conviction would not change the balance of this factor in light of Cortez's nine burglary convictions. Accordingly, we hold that this factor weighs in favor of admission.

*ii. Temporal Proximity of Past Offenses*

In deciding whether, in the interests of justice, the probative value of a remote conviction substantially outweighs its prejudicial effect, a court may consider all relevant specific facts and circumstances, including whether intervening convictions dilute the prejudice of that remote conviction. *Meadows v. State*, 455 S.W.3d 166, 170 (Tex.Crim.App. 2015).

Here, trial began on August 3, 2018. Neither party disputes that Cortez's burglary convictions in 1993, his illegal re-entry conviction in 2002, and his burglary-of-a-building

10

conviction in 2002 all exceed the ten-year mark under Texas Rule of Evidence 609(b). *See* TEX.R.EVID. 609(b).

Yet, Cortez was convicted for two additional burglaries in November 2002 and one additional burglary in January 2003, and his sentence for all three was fifteen-years' confinement to run concurrently. The State points out that the record does not indicate when Cortez was released from confinement on these convictions. Although we appreciate the State's candor on this *Theus* factor, we nonetheless observe that this unknown release date for these three most recent convictions militates against him here because his arguments on appeal are all in the posture of an ineffective-assistance claim, and for such a claim, he bears the burden of proof. *See Weaver*, 137 S.Ct. at 1910. Accordingly, we will analyze these most recent three convictions as falling well-within the ten-year mark of Rule 609(b). *See* TEX.R.EVID. 609(b)(providing that the ten-year period for determining the appropriate balancing test is measured from the later of the date of the conviction or release from confinement).

Although not all of Cortez's convictions lie outside the ten-year period under Rule 609(b), both parties appear to generally lump all of Cortez's convictions together for the balancing test, and the State analyzes the *Theus* factors under the more stringent test of Rule 609(b), requiring that the probative value of those convictions substantially outweighs their prejudicial effect. Thus, we will also utilize that more stringent test in our overall review of the *Theus* factors.

As the age of most of Cortez's convictions is greater than ten years, we would normally hold that this factor weighs against admission of the accumulated sum of those convictions. However, the nature and timing of convictions that Cortez accumulated in both the more distant past and the not-so-distant past leads us to conclude that any prejudice has been sufficiently diluted

11

under these circumstances. First, aside from a single conviction for illegal re-entry, all of Cortez's convictions are for repeated burglaries. Second, Cortez's spree of burglaries did not amount to a solitary period of time in his life that can be neatly partitioned, and instead, his convictions occurred across four separate dates throughout a nearly ten-year period. And third, three of his burglaries fall within the ten-year period of Rule 609 for our analysis, as discussed above. Considering the totality of these specific facts and circumstances, we hold that the more recent, intervening convictions in Cortez's criminal history – namely, the five offenses beginning with his October 2002 illegal re-entry conviction onward – demonstrate an undiminished propensity for crime that sufficiently dilutes any prejudice stemming from admission of his older convictions under this *Theus* factor. *See Meadows*, 455 S.W.3d at 170 (instructing that intervening convictions can dilute the prejudice of remote convictions); *see also Lynch v. State*, No. 08-15-00371-CR, 2018 WL 636265, at *5 (Tex.App.—El Paso Jan. 31, 2018, pet. ref'd)(not designated for publication)(where this Court held that the second *Theus* factor favored admission of defendant's remote conviction where his other crimes were evenly spread over the twenty-year period between that first conviction and trial and where his crimes demonstrated a propensity for running afoul of the law); *Cavitt v. State*, 507 S.W.3d 235, 258-59 (Tex.App.—Houston [1st Dist.] 2015, pet. ref'd)(holding that intervening convictions diluted prejudice in introducing a forty-year-old crime).

Accordingly, we hold that this factor favors admission of Cortez's convictions.

*iii. Similarity of Crimes*

If the past crime and charged crime are similar, the third factor will militate against admission. *Theus*, 845 S.W.2d at 881. In its brief, the State notes that "Cortez was not on trial for

burglary of habitation, but because there was evidence that he entered Herrera's home without her consent, this factor likely weights against admission." The State does not discuss how Cortez's conviction for illegal re-entry should be analyzed under this *Theus* factor, but as the State noted this factor likely weighs against admission overall, we will assume that Cortez's single conviction for illegal re-entry does not affect the balance of this factor here. With these concessions, we will assume, without expressly so holding, that this factor weighs against admission under these facts. *Accord Chavez v. State*, No. 05-17-00795-CR, 2018 WL 2773259, at *4 (Tex.App.—Dallas June 11, 2018, no pet.)(mem. op., not designated for publication) (holding that the charged aggravated robbery and the prior offenses of burglary and theft were sufficiently similar to weigh against admission, even where the elements of those offenses were not identical).

### iv. Importance of Testimony and Credibility

The last two factors are related because both depend on the nature of a defendant's defense and the means available to him to prove that defense. *Theus*, 845 S.W.2d at 881. As the Court stated in *Theus*, "[w]hen the case involves the testimony of only the defendant and the State's witnesses, however, the importance of the defendant's credibility and testimony escalates. As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility." *Id*.

In this case, the jury was faced with resolving a "he-said-she-said" conflict between Alan and Cortez that would determine the outcome of its verdict. Alan testified that Cortez threatened to kill him and held two knives with which he appeared ready to reinforce that threat. Although Alan's testimony was corroborated by other evidence, he was the only person who witnessed the precise acts by Cortez that constituted aggravated assault – i.e., Cortez's threat and use or

13

exhibition of knives. By contrast, Cortez testified, as the sole defense witness at trial, that he never had any knives and never threatened anyone. And in his testimony, Cortez agreed that the case "boiled down" to who the jury chose to believe.

In distilled form, the jury's verdict thus turned solely on a credibility determination between the victim and defendant, and we hold that this factor weighs significantly in favor of admission because the defendant's testimony and credibility was of paramount importance here. *See Theus*, 845 S.W.2d at 881.

*v. Conclusion: Cortez's Prior Convictions would have been Admissible under Rule 609*

Having found that four of the five *Theus* factors weigh in favor of admission, we consequently hold that the probative value of Cortez's accumulated prior convictions substantially outweighed their prejudicial effect and that his convictions were therefore admissible to attack his credibility. *See* TEX.R.EVID. 609(b). At the very least, the trial court would not have abused its discretion in admitting those convictions in light of the "wide discretion" afforded to it on such an evidentiary ruling under Rule 609. *See Theus*, 845 S.W.2d at 880.

As Cortez's convictions were admissible, trial counsel could not have performed deficiently by eliciting testimony from Cortez about those convictions on direct-examination or by failing to object to further testimony about those convictions on cross-examination. *See, e.g.*, *Ex parte Salcido*, 2020 WL 1861967, at *7; *Gomez*, 2012 WL 390970, at *7 (cases where this Court held that trial counsel cannot commit deficient performance by failing to object to admissible evidence). Therefore, we overrule Cortez's first issue presented for review based on his failure to show deficient performance on his claim, and we need not consider the prejudice component of this ineffective-assistance claim. *See Strickland*, 466 U.S. at 687; *Rylander* 101 S.W.3d at 110.

14

**C. Issue Two: Whether Trial Counsel Committed Ineffective Assistance by Failing to Request a Limiting Instruction in the Jury Charge for Cortez's Prior Convictions**

*1. Applicable Law*

Limiting instructions are governed by Texas Rule of Evidence 105, and this rule provides that "[i]f the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly." TEX.R.EVID. 105(a). For impeachment evidence, the limited purpose for which the jury should consider such evidence is to determine the credibility of the witness sought to be impeached. *See Walker v. State*, 300 S.W.3d 836, 851 (Tex.App.—Fort Worth 2009, pet. ref'd). A limiting instruction should be given, if requested, both when the evidence is admitted and then again at the final jury charge. *See Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex.Crim.App. 2001)(observing that the trial court should give a limiting instruction, if requested by a defendant, at the time evidence is admitted); *see also Delgado v. State*, 235 S.W.3d 244, 251 (Tex.Crim.App. 2007)(observing that a limiting instruction should be given in the jury charge if the defendant requested a limiting instruction at the time the evidence was first admitted).

However, a defendant cannot impeach himself as a witness. *Moss v. State*, 364 S.W.2d 389, 390 (Tex.Crim.App. 1963); *Crow v. State*, 648 S.W.2d 17, 18 (Tex.App.—Dallas 1983, no pet.). Thus, a defendant is not entitled to a limiting instruction where the defendant admits to his prior convictions in direct-examination. *See Bush v. State*, 642 S.W.2d 787, 789 (Tex.Crim.App. 1982); *Kirkpatrick v. State*, 515 S.W.2d 289, 292 (Tex.Crim.App. 1974); *Rodriguez v. State*, 687 S.W.2d 505, 508 (Tex.App.—Houston [1st Dist.] 1985, no pet.); *Crow*, 648 S.W.2d at 18. And counsel cannot be ineffective for failing to make a meritless argument. *See, e.g.*, *Ex parte Miller*, No. 08-11-00245-CR, 2012 WL 5949741, at *3 (Tex.App.—El Paso Nov. 28, 2012, no pet.)(not

15

designated for publication); *Montoya v. State*, No. 08-01-00452-CR, 2004 WL 1490184, at *9 (Tex.App.—El Paso July 1, 2004, no pet.)(not designated for publication).

Furthermore, this Court has previously observed that "virtually all courts" have declined to find deficient performance for trial counsel's failure to request a limiting instruction on extraneous-offense evidence where the record is silent on the reasons for counsel's choice:

> In [ ] situations involving extraneous offense evidence, virtually all courts have declined to make a finding of ineffective assistance of counsel on direct appeal based on a trial attorney's failure to request a limiting instruction even when an instruction would have been required if requested. These courts recognize that a trial attorney may have had a reasonable basis for not requesting a limiting instruction and in the absence of a record revealing trial counsel's strategy, have declined to hold that trial counsel's failure to request a limiting instruction amounted to ineffective assistance of counsel.

*Villalva v. State*, No. 08-13-00219-CR, 2015 WL 4134531, at *5 (Tex.App.—El Paso July 8, 2015, no pet.)(not designated for publication).

*2. Application*

For two reasons, we reject Cortez's claim that his trial counsel committed ineffective assistance by failing to request a limiting instruction on his prior convictions. First, as discussed above, trial counsel engaged in reasonable trial strategy by having Cortez admit to his prior convictions on direct-examination. By choosing that strategy, Cortez was then not entitled to receive a limiting instruction on those convictions. *See Bush*, 642 S.W.2d at 789; *Kirkpatrick*, 515 S.W.2d at 292; *Rodriguez*, 687 S.W.2d at 508; *Crow*, 648 S.W.2d at 18. Thus, we hold that trial counsel's failure to request an instruction to which Cortez was not entitled could not have amounted to any deficient performance. *See, e.g.*, *Ex parte Miller*, 2012 WL 5949741, at *3; *Montoya*, 2004 WL 1490184, at *9.

Second, the record is silent about counsel's rationale behind not requesting a limiting

16

instruction. In an attempt to overcome the ineffective-assistance standard of review providing for a strong presumption of reasonable assistance, Cortez argues on appeal that trial counsel's failure to request a limiting instruction is *categorically* not a reasonable trial strategy. We recognize that some errors by trial counsel can constitute deficient performance even without an explanation in the record from counsel if such errors are so outrageous that no competent attorney would have engaged in them. *See Andrews*, 159 S.W.3d at 101. But trial counsel's decision in this case to not request a limiting instruction for the defendant's prior convictions does not belong to this exceptional category of errors because strategic reasons can be imagined for that decision. *See, e.g.*, *Villalva*, 2015 WL 4134531, at *6 ("[S]everal courts have noted that a trial attorney may reasonably decide, as part of her trial strategy, not to request a limiting instruction because a limiting instruction may actually have the effect of bringing unwanted attention to the extraneous offense evidence, and thereby have a negative impact on the defendant's case."); *Agbogwe v. State*, 414 S.W.3d 820, 837 (Tex.App.—Houston [1st Dist.] 2013, no pet.)("The failure of defense counsel to request a limiting instruction is not, by itself, ineffective assistance . . . a reasonable explanation for counsel's actions can be that, as a trial tactic, counsel did not wish to remind the jury of those matters.") [Internal citation and quotations omitted]. Thus, we hold that Cortez has failed to overcome the strong presumption of reasonable assistance and show deficient performance on the silent record in this case. *See Rylander*, 101 S.W.3d at 110-11.

Accordingly, we overrule Cortez's second issue presented for review based on our holdings that he failed to show deficient performance on his claim, and as with his first issue on appeal, we need not consider the prejudice component of this second ineffective-assistance claim either. *See Strickland*, 466 U.S. at 687; *Rylander* 101 S.W.3d at 110.

17

## IV. Conclusion

The trial court's judgment is affirmed.

November 18, 2020

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)